May it please the court, Lawrence Rolfing on behalf of Jenifer Luchsinger. This is a case where we ask, can we take the judge at her word? The judge found that Luchsinger was limited to simple work. She found the cognitive disorder to be medically determinable and severe. She found that Jenifer Luchsinger had a medically determinable severe depressive disorder. Considers all the evidence, including all the evidence that the commissioner, Ben, is about to establish that it's really not as serious as the judge thought it was. That's not appropriate. It's never appropriate for the commissioner to come into this court and to disassemble the ALJ decision. If the ALJ's decision is deficient, it should go back. This court's decision in Brown v. Kijakazi is illustrative. In Brown, the claimant had received a partially favorable decision by a judge that had not been constitutionally appointed. Brown wanted to keep the partially favorable and go back on the unfavorable part of the decision. And the commissioner said, oh, no, no, we want to unwind everything. And the court said, no. The commissioner cannot come into this court and unwind the ALJ decision and undermine the decision based upon evidence that this ALJ actually considered. And so then we get to the step five analysis. Luchsinger clearly cannot perform her past work or past that. The first occupation that's identified is aggressor, and the commissioner of the district court has conceded that that occupation is obsolete. A plethora of district court decisions have agreed, and the commissioner rightly conceded that point in the district court. And that leads to other occupations. I have a question of sort of factual curiosity. If everyone agrees, and it seems pretty obvious that, you know, aggressor is an obsolete profession in light of this, how does a vocational expert actually testify that this exists in substantial numbers in the economy? I mean, how old are these numbers? I'm just wondering how that flew by. If you want me to answer that with extra record knowledge, I can, Your Honor. The problem is that aggressors in an occupational group of word processors and typists, if you've looked at the statistical numbers for the last 20 years, that occupational group has collapsed in job numbers. Why do vocational experts identify it? I don't have a reasonable explanation as to why anyone would identify that occupation. I don't have a reasonable explanation why someone would say there's 200,000 nutscrews in the country either. But they do, and it's incumbent upon either erasing a DOT conflict, as Luke Singer has in this case, or establishing that other reliable data sources rebut that testimony. But I was once accused by an ALJ of wanting to destroy the Step 5 analysis system that exists. And I said, I just want to win this one case. But you might be right. The vocational expert system is you're asking soft science people to give hard science answers, and they're not qualified to do that. They're not qualified to give statistical answers. But that's just an aside in this case. That's not dispositive in this case. That's because it's conceded that that's out of the system. Yeah. So we have two reasonable Level 3 occupations that are left. We have a charge account clerk and a telephone order clerk. Everybody agrees that those are reasonable Level 3 occupations. And everyone agrees that if the simple work limitation sticks, those occupations have an apparent conflict with the DOT under this court's published decision in Zavallin. The commissioner says, well, in Zavallin, we had somebody with far different, more severe impairments, and the claimant was limited to simple and routine work. And this one is just straight simple. The district court actually said that that distinction does not make a difference. Simple is simple. But I agree with you that she could do, in light of the fact that she had a semi-skilled work history, she has a high school education, that she could do reasonable Level 3 jobs. But, again, we're attacking the fundamental, absolutely clear finding of the administrative law judge that Jennifer Luxinger had a medically determinable severe mood disorder, a medically determinable severe cognitive disorder, and the critical word at the end of the Step 3 analysis is residual, residual functional capacity. What can Luxinger do despite the fact that she has medically determinable cognitive and mood disorder? And this ALJ said she's limited to simple work. Period. I would ask that this court mechanically, as I did in the district court, mechanically applies Zavallin. It applies on the facts of this case, and I urge this court to reject the commissioner's suggestion that we can unravel the ALJ decision and make a finding that this ALJ did not make. And I would reserve the remaining four minutes of my time. As you just told the question, at that point, in terms of a relief, your issue with ALJ is just that the ALJ did not make this extra finding that, notwithstanding the apparent conflict, your client could do the telephone order clerk and charge account clerk jobs. Because your client is differently situated from the plaintiff in Zavallin, is that how you say that? That is true. And you're just saying that the ALJ is not the one who made the finding that, well, yes, maybe that person was incapable, but your client would have been able to do those jobs. The ALJ asked the Embry question, the complete medical hypothetical, the complete medical vocational profile question to the vocational expert, and the vocational expert rattled off the three occupations that we've described. And then the ALJ found the testimony consistent with the DOT without explaining why. Because the ALJ did not actually compare the DOT entry. Nothing in the record suggests that the ALJ actually compared the DOT entry to the residual functional capacity to see if there was any tension. And the 004P Masachi error is one of the most common errors that the district courts face in reviewing the final decisions of the commissioner. It's the step five, step four analysis of DOT conflict. It is just one of the most common errors that we see. Yeah, but the district court, I guess, as I understand it, is the one that made the finding, well, yes, maybe there was an error there, but it was harmless because your client is actually capable of doing these jobs given her education or history. Right. You're saying that the district court can't make that finding, the ALJ asked it. They can't make that factual finding. The district court can make a finding where the path from what's actually said to where the court wants to end up is reasonably discernible. That's the Molina standard, the reasonably discernible path. Discernible from the ALJ ruling. From the ALJ ruling, yes. Not from a rereading of the evidence, but from the ALJ decision. And in order to get from the ALJ decision to where the district court ended up, you actually have to break the ALJ decision, and that the court cannot do. All right. Thank you. Time for a vote. Let's hear it from the Council for the Commissioner. Good morning, Your Honors. Daniel Talbert on behalf of the Acting Commissioner of Social Security, Karolu Kitakazi. Went back a few commissioners. I'm not thinking. This court should affirm the ALJ's finding that the claimant was not disabled because she could perform unskilled work that existed in significant numbers in the national economy. A brief argument to this court. Same question. I mean, it's a little troubling that we have a system where the VE can say with a straight face, you know, that there's substantial numbers in the economy for, you know, addressing applications. You know, the idea that someone's sitting down at a desk and filling out addresses by hand. It's like having a VE say, you know, there's substantial numbers of people in the economy who are repairs of 8-track tape players or VCR typewriters. I mean, how does this happen that such a – and the government admits it's an obvious mistake. How does it happen that this kind of thing goes on? So, Your Honor, on this record, I can't say how the vocational expert calculated those numbers because I don't think there was a question asked or any kind of inquiry into that. In terms of generalities, I, again, I know Mr. Walton said a similar thing. He could talk about extra record experience and things like that. And, you know, I know that there are cases where vocational experts identify seemingly obsolete occupations. And that didn't happen in this case. But they may offer some explanation for how, yeah, the job still does exist. You know, an addresser, it says they do handwriting and typewriter, but people still do maybe print out envelopes and addresses. And there may be occupations like that. We don't have anything like that here. And maybe that was what the vocational expert had in mind. But since there's no explanation or clarification, we're not defending it here. So that's probably the best I could offer you with this record. But, again, you know, we're not defending that particular testimony. And it's not – it wasn't raised or discussed below. But our position is that under Chayibu v. Berryhill, Minow v. Apfel and other cases, the error is going to be harmless in identifying one, shall we say, improper job, as long as we can affirm on the others. But the – all right, beginning to the main issue, I mean, the residual functional capacity includes a limitation to carrying out simple instructions. And that seems to just dovetail exactly with the difference between R2 and R3, because R2 says apply common sense understanding to carry out detailed but uninvolved written or oral instructions. And then you go to R3, and it's apply common sense understanding to carry out instructions. So any modifier or limitation to uninvolved instructions drops out. That's the difference between R2 and R3. Well, that means that R3 ignores the limitation to simple. And that seems to be a conflict exactly in the Zavallon sense. And so why doesn't Zavallon say this has to go back? So a couple of responses to that one, Your Honor. The first point is that that is one reading of a difference between Reasoning Level 2 and 3. I refer the Court also to the difference between Reasoning Levels 2 and 3, where Reasoning Level 2 says you have to deal with a few concrete variables. Reasoning Level 3 says you're dealing with several concrete variables. So there's more variation involved in a Reasoning Level 3 occupation. I would submit to this Court that that takes into account the repetitive or routine nature of the work that was in the Zavallon RFC, which we don't have here. Our position is that an RFC for simple work encompasses a wider range of unskilled work. It's not just simple work. It specifically talks in terms of simple instructions. And there's a special, there's two sentences in R2 and R3. And the first sentence deals with the topic of instructions. And one of them confines it to uninvolved, which I think is similar to simple. And the other has no qualifier and just says you can understand and carry out instructions, period. Right. So I'm sorry. Okay. So am I cutting you off again, Your Honor? I'm sorry. Go ahead. Okay. Thank you very much. So I think the question then becomes where do we find simple in the telephone or clerk or the charge account clerk occupations, right? Where do we find that they're consistent with simple work if the DOT says they have Reasoning Level 3? And as Your Honor outlined, you know, Reasoning Level 3 doesn't mention simple. And my answer to that is we find that in terms of the way the agency has consistently defined unskilled work throughout the regulations and its other policy statements. And the agency says that unskilled work is work that involves simple duties, you know, to perform unskilled work you need to be able to understand, carry out, and remember simple instructions. That's pretty much identical to what the RFC is here. So our position is that the rule that we're asking this court to apply is that unskilled work equals simple instructions and that these equal unskilled work. Walk me through what exactly says that. Sure, Your Honor. So in the regulations, if you look at DOT 20 CFR, Code of Federal Regulations, it's on Section 404.1568. That defines unskilled work to involve simple duties. Social Security Ruling 8515 has the language about simple instructions. And the last one I would offer is also in the regulations. It's 20 CFR 404.1522, and that is discussing basic work activities. And when discussing basic work activities, it notes that the ability to understand, carry out, and remember simple instructions is a basic demand of work. So if we read all of those together, we're seeing that the agency is saying unskilled work, that means simple. And the occupations here, charge account clerk and telephone order clerk, they are unskilled occupations because they're specific vocational preparation level, too. You can see that in the dictionary of occupational titles as well. So I guess what we're coming up with here is saying in order to reconcile the case law, like Zavalin and rounds, and the commissioner's regulations, and SSRs, and just this longstanding definition of unskilled work, the rule that would allow us to reconcile that would be to say that an RFC for simple, repetitive work might only allow up to reasoning level two, just like an RFC for simple one- to two-step tasks, like in rounds, could only allow up to reasoning level one. But if we're saying simple instructions, which sort of encompasses all simple work, that could allow for unskilled jobs up to a higher level of reasoning, even reasoning level three, like in this case. And I'd submit that that kind of reading of differentiating between those different simple RFCs is fully consistent with the approach this court has taken in cases like Zavalin and rounds, where it said, okay, simple repetitive, that's one thing. Simple one-to-two-step, that's something lower. So doing that case-by-case analysis is the right approach to take to decide if there's a conflict. That's also consistent with Gutierrez v. Colvin, which says that, remember, which says that the conflict has to be apparent or obvious. But deciding this case in your favor, even on a case-by-case inquiry, would necessarily expand the law of what constitutes RFC two, don't you think? Your Honor, I would say it would not. Actually applying it in the way Mr. Rolfing wants to apply it would be expanding Zavalin, so that it would say that an RFC different. Well, what authority would you cite then, contrary to Zavalin, to allow us to find that on the basis of the client's understanding, remembering, and carrying out of simple instruction, she should be put in a residual functioning capacity range of three? I mean, those words are specifically set forth in RFC two. So it seemed to me that Zavalin, notwithstanding, you'd have to have some authority or convince us to expand this type of individual, or to recategorize this individual into a level three category. So, Your Honor, I would disagree. The definition of residual level two says simple instructions. I mean, the language is different. It talks about detailed but uninvolved written and oral instructions. That's not the same as simple instructions. And maybe that's a different argument. That could be a different case. But the reasoning levels, they don't necessarily equate to exact RFCs. And that's why my position is that this Court should take that case-by-case basis. And I would invoke – I see I'm getting close to running out of my time, but I hope I can get some indulgence to wrap up the answer. I would invoke also Judge Christin's admittedly opinion only for herself in the unpublished case of Rasmussen last year, where she kind of endorsed that case-by-case approach of saying Zavalin was a specific set of facts for a particular RFC, something that's a bit different from that, doesn't necessarily create an apparent conflict. And I would note that, you know, of course, as I said, that's just the writings of one judge. But Judge Christin was on the panel in Zavalin. So I think that's worth some consideration. I think the analysis is persuasive as well. And if I could just really quickly say one final point on this. To respond to Judge Murphy's question, the other authority I would offer for saying that this RFC for simple instructions can get us beyond reasoning level 2 is all those regulatory citations I was giving to Judge Collins, because an ability to do – to understand, perform, carry out simple instructions should, under the agency's regulations and definitions, permit perhaps the entire range of unskilled work, but certainly a range of unskilled work that could allow up to reasoning level 3 if the lesser, simple, repetitive RFC only allows up to reasoning level 2. I know we didn't talk about the harmless error, and that's in my brief. So I realize I'm over time. So unless there are further questions, I'll ask the Court to affirm the ALJ's decision on either of the bases we identified. And I'll thank you very much for your time. Okay. Thank you very much for your argument. In general, unskilled work is simple. In general, most of the unskilled work is reasoning levels 1 and 2. Most. The ones that are reasoning level 3 are like order clerk. Takes food and beverage orders over a telephone or intercom system and records order on a ticket. That's the purpose of the job. Dealing with people. The charge account clerk is similar. The purpose statement set forth in the DOT before the colon in the narrative interviews customers applying for charge accounts. That's not simple work. Because as this Court is well aware, dealing with people and the intricate and intimate variability of people is never simple. You're dealing with people that don't know the menu. You're dealing with people that don't know whether or not they qualify for a charge account. They don't have all their financial papers together. They're seeking credit. They're buying food. They're in a hotel. It's late at night. That's not simple work. That's not the kind of work. And the exceptions, the few reasoning level 3 occupations out there, most of them are sedentary in variety, are the types of work that are dealing with people. And because dealing with people, the public is significantly different than manufacturing, packaging, assembling. In response to your opposing counsel's argument that if you string together these regulations and the Social Security ruling, you end up with a result that all unskilled work involves an ability to handle simple instructions. My response to that is what I tried to make clear at the outset, Judge, most. Most of the jobs are like that. Most of the jobs are object-oriented. They're thing-oriented. They're not people-oriented. But these occupations, according to the DOT, are people-oriented. And if the ALJ wants to say, I'm aware that the circuit court has found that reasoning level 3 has an apparent conflict with the limitation of simple work, but I'm going to go ahead and resolve that conflict here and find that charge account clerk and telephone order clerk are still simple, and I'm going to resolve that conflict. That's what the administrative law judge is supposed to do because it's not, the apparent conflict is not a bar, it's a reason for explanation. And the ALJ should explain the conflict and not leave it to able counsel and the district court to come up with a reason why. And I just want to point out that 404.15.68 and its SSI Corollary 416.968, the definitions of skill level is not in the government's brief. It shouldn't be considered. Thank you.
judges: WATFORD, COLLINS, Murphy